UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROBERT MINIX, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | C.A. NO. 4:08-cv-2356 |
| § | |
| LONGHORN GLASS § | |
| MANUFACTURING, L.P., § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Pending before the Court is the Motion for Summary Judgment (Doc. No. 14) filed by Defendant Longhorn Glass Manufacturing, L.P. ("Longhorn"). For the reasons set forth below, Defendant's Motion must be granted.

### I.   BACKGROUND

This case arises out of Longhorn's termination of Plaintiff Robert Minix ("Minix"), a black male. Minix asserts that Longhorn was motivated by race in its decision to terminate him, thereby violating Title VII of the Civil Rights Act of 1964.

Longhorn is owned by Anheuser-Bush Companies, Inc. It manufactures glass bottles that are sent to Anheuser-Busch's brewery in Houston. (Williams Aff. ¶ 2; Minix Dep. 53:19-21, 59:7-16, June 23, 2009.) The manufacturing process begins in the "hot end" of the plant where raw materials are received and put through a furnace that melts the materials into liquid glass. (Minix Dep. 60:3-23.) The glass is formed into bottles, which are moved into the "cold end" of the plant for quality control inspection, packaging, and shipping. (Minix Dep. 60:5-23.)

Longhorn hired Minix in 2002. (Minix Dep. 53:14-18.) Minix started as a packaging specialist, a position he stayed in for about six months. (Minix Dep. 58:9-14.) For the rest of his

1

career at Longhorn, Minix worked an eight-hour rotating shift as a glass technician. (Minix Dep. 63:13-16; 67:13-25.) His primary role was as a machine operator in the "hot end" where he was responsible for lubricating the machines. (Minix Dep. 63:19-23; 64:5-10.) Minix's duties also included checking for defects, determining their cause, reporting the defects to quality control, maintaining reporting records, and changing out the equipment when necessary. (Minix Dep. 63:23-64:4; 65:20-66:1.) Minix would also assist "upkeeps," higher paid employees responsible for handling any problems that occurred with the machines. (Minix Dep. 63:23-25; 64:11-65:3.) Minix had the opportunity to work as an upkeep as well, but only on a temporary basis. (Minix Dep. 65:4-19.)

On August 5, 2007, Minix was involved in an incident with another Longhorn employee, Rafael Colon. (Williams Aff. ¶ 8.) The two parties' versions of the incident differ significantly. In considering this summary judgment motion, the Court must view all evidence in the light most favorable to Minix as the non-movant, and draw all reasonable inferences in Minix's favor. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). Thus, the Court recounts Minix's version of the altercation.

Minix and Colon were both working the day shift. (Minix Dep. 107:3-8; 111:6-12.) Minix was working in Shop 13, and the altercation between him and Colon occurred in a booth between Shop 12 and 13. (Minix Dep. 124:8-15.) According to Minix, Shop 13 was not running at full capacity because the machine was having operational problems with bottle handling, resulting in bottle defects. (Pl.'s Mem. in Opp'n to Def.'s Mot. Summ. J. Ex. C.) Colon was the inspector for Shop 13. About one or two hours into Minix's shift, Colon brought him a Critical Defect Summary Sheet regarding a defect he had found. *Id.* Minix promptly filled out and

2

signed the document, but did not return it to Colon immediately. Instead, he put it near the Inspection Sheet, a form used by inspectors to track defects. *Id.*

As the shift continued, new defects were found. Minix asked Colon to come back to the "hot end" of the plant. Minix asked that Colon bring him the defective bottles so he could "assess the issue and tend to the matter." Colon forcefully pushed Minix's hand out of the way and stated that "what [Minix] said didn't matter and if [Colon] sees whatever, he is going to 'put it into the fucking mould reader.'" *Id.* Minix told Colon that he understood but asked that he show Minix any potential defects so that Minix could work on the problem ahead of time. *Id.*

Shop 13 continued experiencing problems throughout the day. Colon brought back more Critical Defect Summary Sheets for Minix to fill out. When he later brought Minix defective bottles, he poked Minix in the shoulder and insisted that Minix sign the Critical Summaries. *Id.*

After thirty minutes or so, as the defects persisted, machine repairman Efferson Bushnell and Minix went to the 12/13 Shop Booth ("Booth") to discuss a plan of action for the problems. Colon was present for the discussion. *Id.* Colon again insisted that Minix complete the Critical Summary Sheets and Minix told Colon he would complete them when he had time. Minix told Colon that he was having a problem on the shop, but Colon insisted that Minix needed "to [complete the paperwork] now." Minix told Colon he would do it when he had time and he and Bushnell left the Booth. *Id.*

When Minix later saw a feasible time to fill out the Critical Summaries, he returned to the Booth. Colon, Debbie Ray-Sykes, Andy Romero, and James LeMasters were inside the Booth. As Minix completed the sheets, Ray-Sykes yelled, "Hey! Hey! Hey!" to let him know that a machine was jamming. Minix then turned and shoved the Critical Summary Sheets under the

3

printer and told Colon, in a non-aggressive manner, "Man, you are going to have to take this shit up front." Minix then ran out to attend to the jam. *Id.*

Later that day, Minix approached Colon at the Booth to apologize for not completing the Critical Summaries earlier. Minix followed Colon into the Booth intending to discuss the matter, but instead, Colon exclaimed, "Don't you ever throw any fucking paper at me again!" *Id.* Minix answered in shock, and Colon repeated himself. Minix told Colon, "Hey man, I didn't throw any paper at you." As the two argued about whether Minix had thrown paper at Colon, Minix reached for the Critical Summaries to illustrate that he couldn't have thrown them at Colon. *Id.* In the process, Minix accidentally bumped Colon and Colon's drink spilled. Minix immediately apologized, and put his hands up in a "surrender type manner." *Id.* Colon told him to "[b]ack the fuck off," and Minix replied that Colon was "tripping." Colon then said to Minix, "You need to get your ass out there on the floor and do your job." Minix told Colon that he was not his boss, and Colon responded, "Yeah, whatever [b]itch." Minix tried to reconcile with Colon as both men headed towards the door, and Colon told Minix, twice, "Get the fuck out of my way." Minix responded, "Hey cuz! I'm not in your way." Minix stepped back towards the wall and again held his hands up in surrender. Colon forcefully flung open the door and Minix put his hand up in an effort to protect his face. Minix did not grab the door or shove it back. Minix said to Colon, "Hey man, don't do that," to which Colon responded, "Fuck you." Minix then returned to the Booth. Colon returned to his position. The two men did not engage in any more conversation, nor did they have any physical contact whatsoever that day. *Id.*

For its part, Longhorn conducted a lengthy investigation of the fight between Minix and Colon, an investigation that lasted from August 5, 2007, the date of the incident, until Minix's ultimate termination on August 27, 2007. The parties agree that Minix met with supervisor Chris

4

Chandler on August 7, 2007, to give his side of the altercation between him and Colon. (Minix Dep. 116:21-25.) Chandler also conveyed Colon's version of the events to Minix. (Minix Dep. 117:24-118:2.) Two union representatives were also present at the meeting. (Minix Dep. 113:13-18.) Minix was again called in for a meeting on August 16, 2007, this time with human resources manager Gerri Williams. (Minix Dep. 119:5-11; Williams Aff. ¶ 2.) The union president also attended the meeting. (Minix Dep. 119:5-17.) Williams listened to Minix's version of the altercation and also relayed to him Colon's version. (Minix Dep. 124:2-10.)

Chandler and Williams interviewed Colon and two additional witnesses in the matter. (Minix Dep. 140:14-22; Williams Aff. ¶ 8.) All three individuals told a version of the story that differed greatly from Minix's recounting. The parties agree that the witnesses accused Minix of cursing at Colon, using a racial epithet, physically poking Colon in the chest, and attempting to intimidate witnesses to the altercation. (Williams Aff. ¶ 10-11; Minix Dep. 148:3-149:2.)

When the investigation was complete, Longhorn management, including human resources manager Williams, the general manager, and plant manager, reviewed the findings of the investigation in deciding which course of action to take. (Williams Aff. ¶ 12.) The corroborating evidence received from the witnesses confirmed Colon's version of the events and "weighed heavily" in Longhorn's decision. (Williams Aff. ¶ 11.) Ultimately, Longhorn decided to terminate Minix. (Williams Aff. ¶ 12.) The company informed Minix on August 27, 2007 that it had concluded that Minix had engaged in threatening and abusive behavior toward a coworker and later lied about it. It further informed Minix that, because of the seriousness of the incident, the company had decided to terminate his employment. (Minix Dep. Ex. 21; Williams Aff. ¶ 12; Minix Dep. 129:18-130:1.) Minix expressed his desire to file a grievance with the

union. (Minix Dep. 197:18-198:2.) The grievance was discussed with management, but ultimately withdrawn by the union. (Minix Dep. Ex. 23.)

About one week after Minix was terminated, George Griffith, a white male employee, was involved in an unrelated fight in Longhorn's cafeteria. (Pl.'s Mem. in Opp'n to Def.'s Mot. Summ. J. ¶ 6; Collins Dep. 21:6-11.) Griffith started an altercation with Veronica Rideaux, a black female employee. Griffith was accused of cursing, yelling, and displaying an abusive demeanor toward Rideaux. (Minix Dep. Ex. 22; Collins Dep. 21:21-25.) Longhorn supervisor Jerry Collins investigated the incident. He spoke with Rideaux and witnesses about Griffith's behavior. (Collins Dep. 21:17-20.) Collins recommended that Longhorn issue Griffith a written warning, a recommendation the company followed. (Collins Dep. 22:6-8.) In its warning, Longhorn told Griffith that "further violation of Company rules [would] lead to more serious disciplinary action[,] up to and including termination." (Minix Dep. Ex. 22.)

Minix filed a charge of employment discrimination with the Equal Opportunity Employment Commission ("EEOC"), and received a notice of right to sue. Minix then filed suit in this Court, asserting that Defendant had violated Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000(e), et seq., by discriminating against Plaintiff on the basis of his race. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II.    SUMMARY JUDGMENT

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. FED. R. CIV. P. 56(e)(1); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'" (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))).

### III. TITLE VII

#### A. Prima Facie Case of Race Discrimination

"Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin." *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 140 (5th Cir. 1996). Title VII claims are subject to the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> *McDonnell Douglas* instructs that the plaintiff must first establish a prima facie case of discrimination. Once the plaintiff presents a prima facie case, the defendant must then articulate a legitimate, nondiscriminatory reason for the questioned employment action. If the defendant is able to do so, the burden shifts back to the plaintiff to produce evidence that the defendant's articulated reason is merely a pretext for discrimination.

*Frank v. Xerox Co.*, 347 F.3d 130, 137 (5th Cir. 2003) (internal citations omitted). To establish a prima facie case of discrimination, a plaintiff must show: (i) she belonged to a protected class; (ii) she was otherwise qualified for her position; (iii) she was discharged or suffered some adverse employment action by the employer; and (iv) she was replaced by someone outside her

protected group or was treated less favorably than other similarly situated employees outside the protected group, under nearly identical circumstances. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

The first three elements of a prima facie case are not disputed in this case. Minix is a black male, he was otherwise qualified for his position, and he was discharged from employment. (Def.'s Mot. for Summ. J. 15.) Thus, the success of Minix's prima facie case turns on whether George Griffith, the white employee who received a written warning rather than termination, is properly considered a similarly situated employee.

In order for Minix to name a proper comparator, he must demonstrate that his misconduct "was nearly identical to that engaged by a[n] employee [not within his protected class] whom [the company] retained." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001). Conduct between comparators "is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer." *Id.* In this case, Minix's conduct and Griffith's conduct were far from identical. Minix was accused of using a racial epithet, physically poking Colon in the chest, knocking a drink out of his hand, and attempting to intimidate witnesses to the altercation. (Minix Dep. Ex. 21.) By comparison, Longhorn's investigation revealed that Griffith had yelled and cursed at a coworker, and displayed an abusive demeanor. (Minix Dep. Ex. 22.) Minix makes no showing that Griffith's behavior went beyond the factual determinations outlined by Longhorn. These differences in conduct are significant, and prevent Minix from claiming that he suffered disparate treatment under nearly identical circumstances. Thus, Minix fails to

demonstrate a prima facie case because he cannot meet the fourth prong of the *McDonnell Douglas* test.

Minix responds that the investigation was not adequate considering the harsh discipline he received. (Minix Dep. 134:13-15.) However, Minix does not give concrete suggestions as to how the investigation process could have been improved, or how its alleged inadequacy might somehow have been related to Longhorn's discriminatory motive. He asserts only that Longhorn should have gone more "in depth" into the incident itself, and suggested that the testimony given by the witnesses was contradictory (Minix Dep. 134:16-135:1; 155:2-16.) Minix does not provide any evidence for his belief that the evidence obtained from witnesses was somehow contradictory, and he admits that Longhorn discussed the incident with everyone involved before taking the adverse employment action. (Minix Dep. 140:14-22.) Minix further admits that if the allegations against him were true, they would constitute sufficient reason for termination. (Minix Dep. 131:20-132:3.) Under the Title VII framework, it is unimportant whether Longhorn conducted the most thorough investigation possible, or whether the information supplied to it by the witnesses was even correct. The only relevant inquiry is whether Longhorn's decisionmaking process was infected by an intentional discriminatory motive. *See St. Mary's Honor Ctr.*, 509 U.S. at 506. In other words, even if Longhorn did come to an incorrect conclusion based on the investigation, that is not enough for Minix to demonstrate that Longhorn had a racial motive in terminating him. "[E]vidence that the employer's investigation merely came to an incorrect conclusion does not establish a racial motivation behind an adverse employment decision. Management does not have to make proper decisions, only non-discriminatory ones." *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005).

The Court finds that Griffith is not an adequate comparator to Minix given the important differences between the two incidents.[1] Without more, Minix's unsupported speculation concerning the circumstances of his termination does not comprise a prima facie case under the *McDonnell Douglas* framework.

### B. Legitimate, Non-Discriminatory Reason

Even if Minix were able to make out a prima facie case, he is not entitled to summary judgment because he cannot adequately rebut Longhorn's legitimate, non-discriminatory reason for firing him.

If a plaintiff establishes a prima facie case, she successfully raises an inference of intentional discrimination. The burden of production then shifts to the employer, who must offer a legitimate, non-discriminatory reason for its adverse employment action against the plaintiff. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). Once the employer provides a legitimate, non-discriminatory reason, the inference of discrimination drops out, and the burden shifts to the employee to show that the employer's proffered reason is pretext for racially motivated action. *Id.* If the defendant meets its burden of production, "the *McDonnell Douglas* framework—with its presumptions and burdens" disappears, and "the sole remaining issue" is "'discrimination vel non.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000) (citing *St. Mary's Honor Ctr.*, 509 U.S. at 510)). The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 143 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253

---

[1] The Court does not consider evidence of the two employees' disciplinary records to be relevant in this case. Minix did have far more disciplinary violations on file than Griffith. (Minix Dep. Ex. 16; Collins Dep. ¶ 6.) However, Longhorn's asserted basis for its termination was solely the altercation between Minix and Colon on August 5, 2007; therefore, Minix's earlier disciplinary violations are irrelevant in determining whether Minix and Griffith are proper comparators.

(1981)). To satisfy that burden, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (citing *Burdine*, 450 U.S. at 256); *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003); *see also Gee v. Principi*, 289 F.3d 342, 347-48 (5th Cir. 2002) (finding that an employer's inconsistent explanations for its employment decisions at different times may permit a jury to infer that the proffered reasons are pretextual).

Even though the inference of discrimination drops out once defendant offers a legitimate, non-discriminatory reason for its adverse employment action, "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom' . . . on the issue of whether the defendant's explanation is pretextual." *Reeves*, 530 U.S. at 143 (citing *St. Mary's Honor Ctr.*, 509 U.S. at 510; *Burdine*, 450 U.S. at 255 n.10). However, a showing by the plaintiff that defendant's legitimate non-discriminatory reason is pretext for racial bias "will not always be enough to prevent summary judgment, because there will be cases where a plaintiff has both established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, yet 'no rational factfinder could conclude that the action was discriminatory.'" *See Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (citations omitted). Ultimately, "[i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *St. Mary's Honor Ctr.*, 509 U.S. at 511. In a case in which plaintiff shows a defendant's legitimate, non-discriminatory reason is false, "[w]hether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered.'" *Price*, 283 F.3d at 720 (citing *Reeves*, 530 U.S. at 148-49);

11

*see also Vadie v. Miss. State Univ.*, 218 F.3d 365, 374 n.23 (5th Cir. 2000) (stating that a plaintiff can avoid summary judgment when the "evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [race] was a determinative factor in the actions of which the plaintiff complains").

Longhorn offers the following explanation of Minix's termination: "[T]he reason for Mr. Minix's termination was his violation of the company's Plant Rules and the severity of his conduct on August 5, 2007." (Def.'s Mot. for Summ. J. 17.) This qualifies as a legitimate, non-discriminatory reason. The plant rules specifically forbid fighting on company property and the use of abusive or profane language towards another employee. (Minix Dep. Ex. 10.) Longhorn asserts that it had a good faith belief that Minix engaged in threatening and abusive behavior toward Colon, and has provided substantial evidence that the adverse employment action followed from a careful investigation. (Def.'s Mot. for Summ. J. 17.) This Court agrees. Two different supervisors at Longhorn detailed the investigation procedures and findings in either affidavits or depositions, and the company's termination letter details the accusations against Minix. (Minix Dep. Ex. 21.)

Thus, the responsibility to show pretext in Longhorn's legitimate, non-discriminatory reason falls to Minix. He must demonstrate that an "'employer's proffered explanation is unworthy of credence.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). This he fails to do. Minix simply speculates that his termination could have to do with his race because a white employee, Griffith, received a written warning for similar conduct. (Minix Dep. 143:9-15.) Minix argues that the discrepancy between his and Griffith's treatment fails to constitute a

"policy based, race-neutral explanation" as to the outcome. (Pl.'s Mem. in Opp'n to Def.'s Mot. Summ. J. 8). However, for the reasons noted above, the Court concludes that Minix and Griffith were not similarly situated individuals, and so Longhorn was justified in concluding that their infractions warranted different disciplinary responses. The plant rules specifically state that any violation is subject to discipline, up to and including discharge. (Minix Dep. Ex. 10.) Thus, the company has discretion to decide which level of discipline is appropriate for each violation. It is not required to mete out the same disciplinary action to each employee, regardless of the nature and seriousness of the employee's violation. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514-15 (5th Cir. 2001).

Additionally, to the extent Minix argues that Longhorn did not conduct a thorough investigation, he fails to show that Longhorn's legitimate, non-discriminatory reason was pretext (Minix Dep. 134:13-135:12.) Minix acknowledges that he does not know the extent of the company's investigation, and agrees that Longhorn could have been in meetings or discussions with other people regarding the incident before Minix was finally terminated. (Minix Dep. 136:14-137:16.) Furthermore, even if Longhorn did conduct a less-than-thorough investigation, Minix offers no evidence that it did so because of a racial motive.

Minix fails to show that Longhorn's legitimate, non-discriminatory reason is a pretext for racial discrimination. The Court is sensitive to the fact that termination of employment is a severe sanction, especially when, as now, few new jobs are being created in the national economy. Nonetheless, the Court has no portfolio authorizing it to ignore settled law so as to avoid hardship.

Because the Court finds that Minix cannot survive summary judgment, it is unnecessary to discuss whether Minix failed to mitigate his damages after his termination with Longhorn Glass.

## IV. CONCLUSION

Defendant's Motion for Summary Judgment (Doc. No. 14) is **GRANTED**.

**IT IS SO ORDERED.**

SIGNED at Houston, Texas, on this the 19th day of October, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS
ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY
AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN
SENT ONE BY THE COURT.